IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LINDA D. WILLIAMS,                    )
                                      )
                    Plaintiff,        )
                                      )   CIVIL ACTION
v.                                    )
                                      )   No. 06-4027-SAC-JTR
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                      )
                    Defendant.        )
_____ )


REPORT AND RECOMMENDATION


Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and the case be REMANDED for proceedings consistent with this opinion.

I.   Background

Plaintiff's application for disability insurance benefits was denied initially and upon reconsideration. (R. 17, 26-30, 31). After a hearing, an Administrative Law Judge (ALJ) issued a decision Apr. 30, 2004 finding plaintiff disabled within the meaning of the Act beginning Oct. 17, 2003, but not before. (R. 17, 36-44). In determining the onset date, the ALJ exercised his discretion pursuant to 20 C.F.R. § 404.1563(b) to find that plaintiff was an individual "closely approaching advanced age" on Oct. 17, 2003, six months before her fiftieth birthday. (R. 41). He found that plaintiff is unable to perform her past relevant work, has a high school education, a semi-skilled work background, and no skills transferable to other work within her RFC for sedentary work. Id. Applying the Medical-Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2 §§ 201.00(g) and 201.14, the ALJ determined that plaintiff became disabled when she became an individual closely approaching advanced age on Oct. 17, 2003. (R. 41, 43).

Plaintiff requested Appeals Council review of the decision. (R. 17, 88-93). The Appeals Council affirmed the determination of disability beginning Oct. 17, 2003, but remanded for further proceedings regarding the issue of disability before that date.

-2-

(R. 17, 51-54).  Specifically, the Appeals Council found that the ALJ did not adequately evaluate the functional capacity assessments of three physicians and did not discuss or evaluate the third-party questionnaire completed by plaintiff's mother. (R. 52).  Therefore, it remanded for proper evaluation of the medical opinions and of the mother's testimony.  (R. 53).

On remand, a different ALJ held a hearing on Aug. 5, 2005. (R. 17, 674-93).  Plaintiff was represented by an attorney at the hearing, and testimony was taken from plaintiff and a vocational expert.  (R. 674, 675).  On Sept. 8, 2005, the ALJ issued a decision finding plaintiff was not disabled within the meaning of the Act on or before Oct. 16, 2003.  (R. 17-25).  Plaintiff again sought, but was denied, Appeals Council review of the decision. (R. 17, 10-13).  Therefore, the ALJ's decision is the final decision of the Commissioner, subject to judicial review.  (R. 5); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003). Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g). "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  Id.  The court must

determine whether the findings are supported by substantial evidence in the record and whether the correct legal standard was applied.  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)). However, the determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

     An individual is under a disability only if she can establish that she has an impairment which prevents her engaging in substantial gainful activity and is expected to result in death or to last for twelve months.  The impairment must be of such severity that claimant is not only unable to perform her previous work, but cannot, considering her age, education, and work

-4-

experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520 (2005); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset of her disability, whether she has severe impairments, and whether the severity of her impairments meets or equals any listing in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If plaintiff's impairment does not meet or equal a listed impairment, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in

-5-

the national economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one

through four the burden is on claimant to prove a disability that

prevents performance of past relevant work.  <u>Dikeman v. Halter</u>,

245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751

n.2.  At step five, the burden shifts to the Commissioner to show

other jobs in the national economy within plaintiff's RFC.  <u>Id.</u>;

<u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred:  (1) in evaluating the

credibility of plaintiff's allegations of symptoms and

limitations, (2) in evaluating the medical opinions and the third-

party questionnaire for which the Appeals Council granted remand,

and (3) in assessing plaintiff's residual functional capacity

(RFC).  She argues that remand for an immediate award of benefits

is the appropriate remedy.  The Commissioner argues that the ALJ

properly evaluated plaintiff's allegations, the medical opinions,

and plaintiff's mother's questionnaire, and that substantial

evidence supports the ALJ's RFC assessment.  The court finds the

ALJ erred in evaluating the medical opinions, and recommends

remand for a proper evaluation.

**III. Evaluation of Medical Opinions**

    **<u>A.</u>**   **<u>Standard for Evaluating Medical Opinions</u>**

-6-

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with certain factors contained in the regulations. Id. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2006).

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition than other physicians. Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of examining physicians are generally given more weight than the opinions of physicians who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir.

-7-

2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987)
(citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983),
Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier
ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's
opinion on the issue(s) of the nature and severity of [the
claimant's] impairment(s) [(1)] is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and
[(2)] is not inconsistent with the other substantial evidence in
[claimant's] case record, [the Commissioner] will give it
controlling weight." 20 C.F.R. § 404.1527(d)(2); see also, SSR
96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp.
2006). The Tenth Circuit has explained the nature of the inquiry
regarding a treating source's medical opinion. Watkins v.
Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). The ALJ
determines "whether the opinion is 'well-supported by medically
acceptable clinical and laboratory diagnostic techniques.'" Id. at
1300 (quoting SSR 96-2p). If the opinion is well-supported, the
ALJ must determine whether the opinion is consistent with other
substantial evidence in the record. Id. (citing SSR 96-2p).

"[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527" Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.

Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion
completely, he must then give 'specific, legitimate reasons' for
doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th
Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.
1987)).

## B.   Discussion

Plaintiff argues in separately captioned sections of her
brief that the ALJ improperly evaluated the medical opinions for
which the Appeals Council remanded the case--the opinions of
treating physicians, Drs. Patrinely and Hall, and of examining
physician, Dr. Amundson.  She argues both that the ALJ applied the
incorrect legal standard in evaluating the opinions, and that he
gave incorrect weight to each opinion.  She cites evidence
regarding other medical opinions in the record, and argues that
the ALJ improperly weighed those opinions also.  She argues that
the ALJ failed to give controlling weight to the treating
physicians' opinions, and failed to state specifically what weight
each opinion was given.  In each case she argues that the evidence
does not support the weight apparently assigned to the opinion.
The Commissioner argues that the ALJ properly discounted the
opinions of Drs. Patrinely, Hall, and Amundson, but does not

address plaintiff's arguments regarding the relative weight to be assigned to each medical opinion, including the other medical opinions in the record.  The court views plaintiff's argument as a general argument that the ALJ applied the incorrect legal standard in evaluating the medical opinions and that substantial evidence does not support the decision.

The ALJ noted "evidence showing a residual functional capacity for <u>sedentary work</u> and hence disability only beginning October 17, 2003."  (R. 20)(emphasis added).  In the same paragraph, the ALJ summarized medical evidence including give-way weakness in arms and legs, antalgic and unsteady gait, positive straight leg raising, limited shoulder and back range of motion, bilateral lower extremity edema, and MRIs and x-rays showing "ongoing degenerative changes and bulging discs at multiple levels of the lumbar and cervical spine." (R. 21).  He also summarized certain opinions of treating physicians, Drs. Geis and Quick.  (R. 21).  He noted Dr. Geis's statement that "I am basically against chronic narcotic usage but at this point I really don't see any alternative."  (R. 21)(quoting without citation (R. 562)).  He also noted Dr. Quick's opinion that plaintiff is not able to tolerate her pain through a workday, that she is at maximum

-11-

medical improvement, and that "I think that potential for full or part-time employment long-term is poor."  Id.(quoting without citation (R. 448)).

In the very next paragraph, the ALJ stated,

However, there is also evidence indicating that claimant was not totally disabled prior to October 17, 2003. Specifically, in another report, Dr. Quick advised against lifting, pushing or pulling over twenty-five pounds, or repetitive lifting, bending or twisting, which suggests a higher level of functioning than reflected in the later report described above.

(R. 21)(alluding without citation to Dr. Quick's report dated Jan. 7, 2002 (R. 457-59)).  The ALJ also noted reports by a treating physician, Dr. Hendler, and an examining physician, Dr. Hylton, of symptom magnification, potential issues of secondary gain, and somatic dysfunction.  Id.(alluding without specific citation to physicians' reports (R. 584-85, 588-89, 590-95, 625-26)).

Although the first paragraph discussed above purports to summarize evidence of an RFC for sedentary work and, therefore, no disability before plaintiff became an individual closely approaching advanced age, the ALJ does not explain how the evidence cited establishes the ability for sedentary work before Oct. 17, 2003.  Of particular significance here are the medical opinions cited by the ALJ, both of which predate Oct. 17, 2003.

-12-

Dr. Geis's opinion is from an examination report dated Feb. 19, 2003 (R. 559-62) and Dr. Quick's opinion that plaintiff cannot tolerate pain throughout a workday is from a report dated Jun. 25, 2002.

In the second paragraph, the ALJ discussed an earlier report in which Dr. Quick stated limitations which suggest the ability for sedentary work, and the ALJ's discussion implied an inconsistency in Dr. Quick's reports. However, the ALJ did not fully discuss the chronology reflected in Dr. Quick's reports. As noted by the ALJ, Dr. Quick stated limitations suggestive of sedentary work on Jan 7, 2002. (R. 459). Thereafter, on Jan. 17, 2002, plaintiff attempted to return to work and ended up going to the emergency room that afternoon. (R. 454). On Mar. 11, 2002, Dr. Quick again released plaintiff to work with an additional requirement for a stretching and rest break every two to three hours. (R. 453). Thereafter plaintiff attempted to return to work twice, and was twice taken to the emergency room. (R. 451). On Apr. 9, 2002, Dr. Quick determined to continue plaintiff off work, and referred her for a chronic pain management program. (R. 452). On May 13, 2002, Dr. Quick stated, "Linda has made an effort two times with return to work and simply does not seem to

-13-

be able to tolerate working with the level of pain that she

experiences." (R. 450). Finally, on June 25, 2002, Dr. Quick

concluded:

> As I stated in my last note, most of the patients that I
> see with the types of injuries Linda has sustained are
> able to return to work. Linda has made multiple efforts
> and, as stated above, has been compliant with treatment.
> She simply does not seem to be able to tolerate the
> level of pain that is present throughout the day coupled
> with the level of activity her job requires. I believe
> she is MMI [maximum medical improvement] and believe
> that any return to work would result in a failure on her
> part. I think that potential for full or part-time
> employment long-term is poor.

(R. 448). The record does not reflect an inconsistency in Dr.

Quick's opinions as implied by the ALJ's discussion.

The decision reflects that the ALJ viewed part of Dr. Quick's

opinions favorably and part unfavorably but does not contain any

express evaluation of the opinions, discussion of the weight

afforded the opinions, or explanation how the evidence supports a

decision to accept or reject portions of the physician's opinions.

Similarly, the decision reflects that the ALJ viewed the opinions

of Drs. Hendler and Hylton favorably, but there is no express

statement of the weight given those opinions or explanation how

the record evidence supports the weight given.

### 1.    DR. PATRINELY'S OPINION

-14-

Thereafter, the ALJ discussed his consideration of the opinions of Dr. Patrinely, Hall, and Amundson.  (R. 21-22).  With regard to Dr. Patrinely, the ALJ stated, "the undersigned cannot give significant weight to this opinion as the evidence indicates that claimant saw Dr. Patrinely very little for treatment--not nearly as frequently or as prolonged as the treatment and evaluation given by the physicians described above, whose reports and evaluations the undersigned has used in formulating the residual functional capacity for some sedentary work."  (R. 21).  This statement is meaningless in the circumstances.

The ALJ does not explain to which of the "physicians described above" he is referring to discount Dr. Patrinely's opinion.  Since Drs. Quick and Geis treated plaintiff much more frequently than did Dr. Patrinely, the court might assume the ALJ is referring to them.  (R. 447-80 559-68, 572-74, 613-23).  However, the record is clear that the ALJ viewed at least a portion of those physicians' opinions unfavorably.  Moreover, the ALJ did not state the weight given those opinions and did not explain how he arrived at his RFC assessment using them.  Therefore, the court is left only to guess what evidence the ALJ determined supports his decision.  The court would be required to

re-weigh the evidence including the opinions of Drs. Geis and

Quick in order to determine whether it supports the decision to

discount Dr. Patrinely's opinion.  That the court may not do.

If the court assumes the ALJ's statement is referring to the

opinions of Drs. Hendler and Hylton, the result is equally

unhelpful.  Dr. Hylton performed a single examination of plaintiff

at the request of her attorneys and prepared a report which is

included in the record.  (R. 624-26).  The court finds no evidence

Dr. Hylton ever treated plaintiff or examined plaintiff previous

to or after the examination which is the subject of Dr. Hylton's

report.  Thus, Dr. Hylton's opinion does not satisfy the ALJ's

stated basis for rejecting Dr. Patrinely's opinion--that Dr.

Patrinely did not treat plaintiff as frequently or as prolonged as

the "physicians described above."

Both Dr. Patrinely and Dr. Hendler treated plaintiff four

times during the summer and fall of 2002.  (R. 541-52)(Dr.

Patrinely, Aug. 18, Sept. 25, Oct. 17, and Dec. 2, 2002); (R. 584-

95)(Dr. Hendler, Aug. 22, Aug. 29, Oct. 17, and Nov. 14, 2002).

Again, the record does not reveal the disparity in treatment

suggested by the ALJ in the decision.  Moreover, as discussed

above, the ALJ did not state the weight given to the opinions of

-16-

Drs. Hylton and Hendler, explain how the evidence supports that
weight, or explain how the RFC assessment was derived from those
opinions.  In other words, the ALJ made a conclusory statement
that he discounted Dr. Patrinely's opinion because that physician
treated plaintiff much less than did the physicians upon whom the
ALJ relied.  But, the ALJ did not name the physicians upon whom he
relied, did not explain how the record evidence supported the
other unnamed physicians' opinions more than Dr. Patrinely's
opinion, and did not explain how the RFC was derived from the
other physicians' opinions and was supported by the record
evidence.

### 2.   DR. HALL'S OPINION

The ALJ stated he had considered Dr. Hall's May, 2002 report
and determined the opinions therein are not persuasive because the
opinions are vague, do not set forth specific limitations and
restrictions, and "are largely based on claimant's subjective
complaints," and because Dr. Hall is a family doctor seen by
plaintiff only for gynecological problems.  (R. 22).  Again, the
ALJ's conclusory findings are not supported by the record
evidence.  Although Dr. Hall's May, 2002 report (R. 497-98)(Ex.
16F/7,8) does not contain specific limitations and restrictions,

-17-

the physician completed a Medical Source Statement on Aug. 26, 2002 which contained his opinion regarding specific restrictions and limitations regarding plaintiff's abilities.  (R. 492-95)(Ex. 16F/2-5).  The ALJ did not discuss this report, and apparently ignored it in finding that Dr. Hall's opinion does not contain specific restrictions and limitations.  Further, Exhibit 16F contains eighteen pages of Dr. Hall's records, only two of which were the May 2002 report discussed by the ALJ.  Dr. Hall's opinion might not appear so vague if considered in relation to the medical source statement and the other records.

The ALJ's assertion that Dr. Hall was seen for gynecological problems and was not like the other treating and examining physicians who treated plaintiff for her orthopedic impairments, reflects an apparent misunderstanding of plaintiff's hearing testimony.  At the hearing, the ALJ asked plaintiff if Dr. Hall was a "long-term treating doctor" or a worker's compensation doctor.  (R. 681).  Plaintiff responded that she has been seeing Dr. Hall since early 1994.  Id.  The ALJ sought clarification:

```
Q     In '94?
A     It was either the last part of '93 or the first
      part of '94 is when I first --
Q     For what?
```

```
A     I was having some female problems, and they thought
      maybe I had cancer.  And they --
Q     Was he a general practitioner?
A     Yes, sir.
Q     Internal medicine or family doctor?
A     Just family practice, I think.  But, he was at St.
      Francis and [INAUDIBLE].  He was there that day
      that I went in.
```

(R. 681-82).  Plaintiff's testimony was interrupted twice by the

ALJ and at one point was inaudible.  Even so, the testimony does

not indicate plaintiff was seeing Dr. Hall for gynecological

problems, even in 1993 or 1994.  Rather, because "they" thought

plaintiff might have cancer related to gynecological problems,

plaintiff went to see Dr. Hall.  In context, Dr. Hall was a "long-

term treating doctor" who first treated plaintiff in 1993 or 1994

for possible cancer in relation to some gynecological problems,

and had been treating her since.  Moreover, plaintiff stated

earlier in her testimony that Dr. Hall was her family doctor

except for a period when he, himself, was being treated for cancer

and could not practice medicine.  (R. 679-80).

    Finally, and perhaps most importantly, the ALJ erred in

rejecting Dr. Hall's opinion because it was based only on

plaintiff's subjective complaints.  "In choosing to reject the

treating physician's assessment, an ALJ may not make speculative

-19-

inferences from medical reports." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002). Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004). Such a conclusion must be based upon evidence taken from the physician's records. Victory v. Barnhart, 121 F. App'x 819, 823-24 (10th Cir. 2005). Here, there is no indication the ALJ considered any of Dr. Hall's records beyond the May, 2002 report cited. Moreover, the ALJ cites to no evidence from Dr. Hall's records that the physician's opinion was "largely based" on plaintiff's subjective complaints.

The ALJ did not properly weigh Dr. Hall's opinion, and the evidence does not support his determination.

### 3.   DR. AMUNDSON

The ALJ rejected Dr. Amundson's opinion because the doctor is not a treating source and he saw plaintiff only one time. (R. 22). As previously discussed, the nature, length, and extent of a treatment relationship are factors to be considered in weighing a medical opinion. 20 C.F.R. § 404.1527(d). However, the fact that

a particular physician only examined the plaintiff one time or merely reviewed the other medical evidence of record is not sufficient, in itself, to reject a medical opinion outright.  The opinion must be weighed considering all of the regulatory factors and all of the medical evidence (indeed, all of the evidence) in the record.  Id.

If a single visit were sufficient to reject a medical opinion, there would be little justification for consultative medical examinations, medical consultants at the administrative review level, or medical experts at the hearing level.  The errors in this case illustrate the necessity for a proper consideration and evaluation of all medical opinions.  The ALJ should first consider the opinions of the treating physicians and determine whether they are worthy of controlling weight using the procedure discussed in Watkins, 350 F.3d at 1300-01.  If the treating source opinions are not worthy of controlling weight, the ALJ must weigh all of the medical opinions, applying the regulatory factors to determine the weight to assign each opinion, and remembering that the non-treating source opinions must be examined to determine if they outweigh the treating source opinions.  To reject a treating physician's opinion outright, the ALJ must give specific,

legitimate reasons supported by the evidence of record.  The ALJ
must explain the weight given each opinion, and explain how the
evidence supports his determination.

Here, the ALJ did not properly weigh any medical opinions.
He discussed the opinions of Drs. Quick, Geis, Hendler, and Hylton
and indicated in only the most general of terms his approval or
disapproval of certain of those opinions.  He specifically
discounted the opinions of Drs. Patrinely, Hall, and Amundson, but
did not state any specific weight given to any of the opinions.
As discussed above, the analysis given for discounting the
opinions is not supported by substantial evidence in the record as
a whole.

On remand, the Commissioner must properly weigh the medical
opinions.  She must determine whether the opinions of the treating
sources are worthy of controlling weight.  If not, she must
determine of what lesser weight, if any, they are worthy.  She
must also consider the weight to be given the other medical
opinions (including the opinions of the state agency medical
consultants which were not mentioned in the decision at issue),
and explain how the evidence supports the determination made.  If
the opinions of the treating physicians are rejected completely,

she must give specific, legitimate reasons for doing so, supported
by substantial evidence in the record.

**IV.   Remaining Allegations of Error**

The ALJ found that plaintiff's allegations of symptoms are
not credible, in part, because they are inconsistent with the
"reports and opinions of treating and examining physicians."  (R.
20).  Because the ALJ improperly evaluated the medical reports and
opinions, and must re-evaluate those opinions on remand, the basis
relied upon by the ALJ in his credibility determination will
likely change on remand, and it would be premature for the court
to evaluate that determination at this time.  Likewise, the RFC
assessment must be re-evaluated after the medical opinions are
properly weighed, and the court will not attempt to impose a
determination.

The court finds no error in plaintiff's allegation that the
ALJ gave mere "lip-service" to the Appeals Council's order that
the third-party questionnaire of plaintiff's mother be evaluated
and weighed.  (Pl. Br., 54).  In 1996 the Tenth Circuit declined
an invitation "to adopt a rule requiring an ALJ to make specific
written findings of each witness's credibility, particularly where
the written decision reflects that the ALJ considered the

-23-

testimony." <u>Adams v. Chater</u>, 93 F.3d 712, 715 (10th Cir. 1996).

Here, as plaintiff admits, the ALJ stated he had considered

plaintiff's mother's statement, and found it not credible.  (R.

22); (Pl. Br., 54).  As the Tenth Circuit has stated, "our general

practice, which we see no reason to depart from here, is to take a

lower tribunal at its word when it declares that it has considered

a matter." <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir.

2005).  Although the court finds no specific error, it would

caution the Commissioner that, on remand, the statement should be

considered once again in reaching a decision.

**V.   Immediate Award of Benefits**

Plaintiff seeks remand for an immediate award of benefits.

Whether to remand the case for additional fact-finding or for an

immediate award of benefits is within the discretion of the

district court.  <u>Taylor v. Callahan</u>, 969 F. Supp. 664, 673 (D.

Kan. 1997) (citing <u>Dixon v. Heckler</u>, 811 F.2d 506, 511 (10th Cir.

1987)).

Where remand for additional fact-finding would serve no

useful purpose, the court may order an immediate award.  <u>Sorenson</u>

<u>v. Bowen</u>, 888 F.2d 706, 713 (10th Cir. 1989).  The decision to

direct an award of benefits should be made only when the

administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986). Here, the record evidence, specifically the medical opinions, have not been properly considered by the Commissioner.  Moreover, the court cannot say that the record evidence is uncontradicted that plaintiff was unable to perform any substantial gainful work existing in the economy during the relevant period before Oct. 17, 2003.  It is the Commissioner's duty to make a disability determination when the evidence is equivocal.  The court does not recommend remand for an immediate award of benefits.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the decision below and REMANDING this case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.

-25-

Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 5th day of January 2007, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**